IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES T. FALLS, | : | Case No. 4:10-CV-00758 |
| Plaintiff, | : | |
| v. | : | (Judge Jones) |
| STATE FARM INSURANCE MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

March 1, 2011

**BACKGROUND:**

Plaintiff, James T. Falls, ("Plaintiff" or "Falls") initiated the instant action by filing a complaint in the Centre County Court of Common Pleas, which defendants removed to federal court on April 9, 2010. (Rec. Doc. No. 1). Named as Defendants are State Farm Insurance Mutual Automobile Insurance Company, State Farm Life and Accident Assurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company (collectively "State Farm"). The complaint alleges breach of contract, and Defendants removed the complaint on the basis of diversity jurisdiction.

Cross motions for summary judgment have been filed. Both motions have

1

been briefed and are ripe for disposition. For the reasons that follow, we will deny Plaintiff's motion and grant Defendants' motion.

**FACTS:**

The facts are substantially not in dispute. The following are not disputed. State Farm is an insurance and financial services company that markets its products through agents. Agents are employed through State Farm's Agency Career Track process. In May 2009, Falls joined State Farm's Agency Career Track. On May 11, 2009, Falls signed a Declaration of Understanding/Statement of Intention where he agreed to abide by the terms of the Agency Career Track. The Declaration of Understanding provided that "Candidates will automatically be withdrawn for ethical or integrity violations occurring or uncovered while pursuing a career as a State Farm agent." The Declaration of Understanding further provides that "[t]here is no guarantee of an appointment as a State Farm agent pursuant to the State Farm Agent's Agreement (Form TICA04) or any successive State Farm Agent's Agreement."

On June 19, 2009[1], James Falls was hired by State Farm as an agent trainee. After an initial approval process, candidates become part of a pool of individuals

---

[1]Although plaintiff's statement of facts and defendants' response cites this date as 2010, we presume this is a typo, as all other events in question took place in 2009.

who are to be considered for agency openings before all other interested individuals. After completing an internship phase and meeting certain eligibility requirements, candidates are appointed as a Term Independent Contract Agent ("TICA") on the date set forth by Form TICA04. The term of form TICA04 is 12 months, but may be terminated at any time, for any reason, by either party.

On November 12, 2009, Falls was provided with an "agent start up kit." Plaintiff spent several thousands of dollars preparing his office. On November 2, 2009, Falls signed State Farm's Agent Agreement Form TICA04, which indicated that his agency with State Farm was to be effective December 1, 2009. The parties dispute whether the form was countersigned by a representative of State Farm. Falls did not keep a copy of Form TICA04. State Farm shredded and discarded Form TICA04 when Falls' employment was terminated.

Falls hired Michelle Quinlan to work for him. Quinlan had to pass several online computer tests to become licensed to work for a State Farm agent. She was working on the tests on November 23, 2009, when a problem with the internet prevented the tests from being marked as completed on her transcript. She told Falls about the problem, and he called another State Farm employee, Yolanda Wilson, for help. The problem was not resolved that day and Quinlan was going to be out of the office the next day. Because she was going to be out of the office,

she gave Falls her online coursework user name and password in case he needed to get into the online transcripts to show that her coursework had been completed. On November 24, 2009, Wilson told Falls that Quinlan's transcripts were still not showing up as completed. Falls logged into Quinlan's online account and completed coursework that Quinlan had not finished. State Farm later discovered that Falls completed coursework that Quinlan had not done, and thereafter suspended him pending an investigation. As a result of the investigation, State Farm terminated Falls' employment.

State Farm maintains a code of conduct with which its employees must comply. State Farm's Human Relations Policy Manual indicates that the company's objective is to counsel employees, rather than provide immediate discharge, however it also indicates that there are some misconduct activities, such as dishonesty, which can lead to discharge without prior warning.

There are disputed facts, which will be considered in the light most favorable to Falls, in defending State Farm's motion for summary judgment. They are as follows. Falls observed Ralph Grover signing Form TICA04 and believed that Grover had authority to sign the form on behalf of State Farm.

Additional disputed facts considered, in the light most favorable to State Farm, in defending Falls' motion for summary judgment are as follows. State Farm

asserts that Form TICA04 was not countersigned by anyone at State Farm.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. Anderson, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones, 214 F.3d at 407. Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a genuine issue of material fact to preclude summary judgment." Anderson, 477 U.S. at 247-48.

The concurrent resolution of cross-motions for summary judgment, as are presented here, can present a formidable task. Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (citing 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998)). On cross-motions for summary judgment, the standard of review does not change.

Each moving party must independently show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968). However, the mandate of Rule 56 that the court view all facts in the light most favorable to the non-moving party may be difficult to apply where all parties are both moving and non-moving parties. "Inferences to which a party is entitled with respect to the opponent's motion may not be granted with respect to its own." Interbusiness Bank, N.A., 318 F. Supp. 2d at 236 (citing United States v. Hall, 730 F. Supp. 646, 648 (M.D. Pa. 1990). Such circumstances may require separate opinions on the respective motions. See Rains, 402 F.2d at 245; Hall, 730 F. Supp. at 648.

In this case, however, the essential facts are substantially undisputed and are wholly supported by the evidence submitted by all parties. Whether the facts are viewed in the light most favorable to the plaintiff or the defendant, the same essential narrative unfolds. The present cross-motions for summary judgment will therefore both be decided by this Memorandum and Order. See Interbusiness Bank, 318 F. Supp. 2d at 236 (relying on the mandate of Fed. R. Civ. P. 1 that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action" in concurrently deciding

cross-motions for summary judgment in single opinion).

**DISCUSSION:**

To establish a claim for breach of contract, Plaintiff must show: 1) existence of a contract, including essential terms; 2) breach of a duty imposed by the contract, and 3) resulting damages. <u>Pittsburgh Constr. Co. V. Griffith</u>, 2003 PA Super 374, 834 A.2d 572 (Pa. Super. 2003), alloc. denied 852 A.2d 313, 578 Pa. 701 (Pa. 2004).

Plaintiff argues that he is entitled to summary judgment for breach of contract under the agency agreement. Falls argues that the agency agreement signed November 2, 2009 was a contract with State Farm; the company breached the agreement by refusing to allow him to assume an agency position on December 1, 2009; and he suffered damages in the form of the money he spent fixing up the office together with lost wages.

Defendants argue that no contract was formed between Falls and State Farm; that even if there was a contract, its terms did not provide for an $18,000 signing bonus; and that if the court finds there was a binding contract, that Falls materially breached the contract and thus discharged State Farm from liability thereunder.

After reviewing the salient facts, we find that there is a valid question as to whether or not there was a contract between the parties. However, it is ultimately

8

not necessary to submit this issue to a jury, because we further find that even if a contract existed, the overwhelming undisputed facts show that Falls materially breached the it. Moreover, if no binding contract was formed, then Falls was an at-will employee who could be discharged at any time. Falls' claims are thus doomed regardless of whether a contract existed.

"The well-established rule in Pennsylvania is that employment relationships are presumed to be at-will absent a clear showing of an agreement to the contrary." Fetter v. Reading Energy Holdings, 22 Phila. 52, 56 (Pa. C.P. 1991), citing DiBonaventura v. Consolidated Rail Corp., 372 Pa.Super. 420, 539 A.2d 865 (1988). "A former employee who asserts a claim for breach of an agreement for a term of employment bears a heavy burden to overcome the presumption of at-will employment." Id. "The employee must demonstrate with clarity and specificity that the parties entered into a contract for a definite term of employment." Greene v. Oliver Realty, Inc., 363 Pa. Super. 534, 526 A.2d 1192 (1987).

"The plaintiff may attempt to rebut the at-will presumption by establishing one of the following features: "(1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception."" Kane v. Platinum Healthcare, LLC, 2011 U.S. Dist. LEXIS 7398

9

(E.D. Pa. Jan. 25, 2011), citing Rapagnani v. Judas Co., 1999 PA Super 203, 736 A.2d 666, 669 (Pa. Super. Ct. 1999) (citing Luteran v. Loral Fairchild Corp., 455 Pa. Super. 364, 688 A.2d 211, 214 (Pa. Super. Ct. 1997)). "To rebut the at-will presumption by showing an express agreement, the plaintiff must present "clear and precise evidence of an oral employment contract for a definite term."" Id. "To demonstrate an implied-in-fact contract, a plaintiff must show that the circumstances surrounding the hiring indicate the parties did not intend for the employment to be "at-will."" Id.

The standard TICA04 clearly contemplates a definite term of employment, and when executed properly appears to be a contract of employment for a definite term. (Rec. Doc. No. 36-2 p. 10-15). Both Falls and State Farm agree that on November 2, 2009, Falls signed the TICA04 to be effective December 1, 2009. But the parties dispute whether State Farm, through Ralph Grover, signed the form. Thus, parties dispute State Farm's intent to be bound.

"If the parties agree to all material terms and only have a formalization remaining, a binding contract is formed; the focus is on the mutual agreement and an intent to be bound by the agreement." RecoverCare, LLC v. Fairweather, 2009 U.S. Dist. LEXIS 79025 (E.D. Pa. Sept. 1, 2009) citing Field v. Golden Triangle Broad., Inc., 451 Pa. 410, 305 A.2d 689, 693-94 (Pa. 1973); Jenkins v. County of

10

Schuylkill, 441 Pa. Super. 642, 658 A.2d 380, 383 (Pa. Super. Ct. 1995). "As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." Shovel Transfer & Storage v. Pa. Liquor Control Bd., 559 Pa. 56, 63 (Pa. 1999). "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself." Id. at 66. Here, the TICA04 states that the contract will be effective "upon its acceptance in writing by the Agent." (Rec. Doc. No. 36-2 at 13). A jury could find that the TICA04 was a binding contract when Falls, the agent, signed the document. Or, a jury could find that because the document contained signature lines for both the Agent and State Farm, the intent was for the document to form a binding contract when both parties signed the document. Because State Farm shredded and discarded Falls' TICA04, there is a factual dispute as to whether it was fully executed. In sum and to reiterate, it is not clear if a contract was formed between the parties.

However, even if the jury were to find that there was an employment contract, the undisputed facts show that Falls materially breached the contract.

"A material breach by one party to a contract entitles the non-breaching party to suspend performance." Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 467 (Pa. Super. Ct. 2003). "If a breach constitutes a material failure of performance,

then the non-breaching party is discharged from all liability under the contract."

Id.

> In determining materiality for purposes of breaching a contract, we consider the following factors:
>
> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

Id. citing Restatement (Second) of Contracts § 241 (1981).

Recently, the Pennsylvania Supreme Court decided that a breach of trust can be a material breach that is so serious it goes to the heart and essence of the contract, rendering the breach incurable. LJL Transp., Inc. v. Pilot Air Freight Corp., 599 Pa. 546, 549 (Pa. 2009). Although the opportunity to cure is not at issue here, the holding that "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the

contract without notice, absent explicit contractual provisions to the contrary" is applicable here. Id. At 567. "Such a breach is so fundamentally destructive, it understandably and inevitably causes the trust which is the bedrock foundation and veritable lifeblood of the parties' contractual relationship to essentially evaporate." Id. "We find our law does not require a non-breaching party to prolong a contractual relationship under such circumstances." Id. At 567-68. "A material breach of a contract relieves the non-breaching party from any continuing duty of performance thereunder." Id. At 560.

Like LJL, the breach of trust caused by Falls in using another State Farm employee's password to complete her work for her, is so grave that could not help but have irreparably damaged the trust between the parties. Falls has admitted that he logged into Quinlan's online account and completed coursework that Quinlan had not done. The fact that Falls committed this act, which clearly impugned his integrity from State Farm's perspective, is undisputed.

Looking to the factors set forth by the Pennsylvania Supreme Court, we find it clear beyond peradventure that Falls materially breached his employment contract with State Farm. Logging on to another employee's account and completing coursework that State Farm expected Quinlan to complete is at a minimum, unethical behavior. This was a breach of trust that occurred at an early time in the parties' dealings, and thus could not be weighed against accumulated

good will.  It was reasonable for State Farm to assume that they could not trust Falls in the future.

Most importantly, Falls failed to comport with standards of good faith and fair dealing.  "Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement."  <u>Donahue v. Federal Express Corp.</u>, 753 A.2d 238, 242 (Pa. Super. Ct. 2000) (internal citations omitted).  "Good faith has been defined as "honesty in fact in the conduct or transaction concerned.""  <u>Id.</u>  "An agency relationship is a fiduciary one . . . [t]hus in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests."  <u>eToll, Inc. v. Elias/Savion Adver.</u>, 811 A.2d 10, 21 (Pa. Super. Ct. 2002).  Falls did not act in good faith.  To repeat, his actions in completing Quinlan's coursework were dishonest.   State Farm was thus relieved of its obligation to perform under any contract that may have existed.

Alternatively, and as previously noted, if no contract existed Falls could suffer termination at State Farm's will.  In this scenario, State Farm possessed the right to discharge Falls at any point, with or without cause.

As a final matter, although Falls' complaint states that he was entitled to an $18,000 signing bonus, the TICA04 does not contemplate such a bonus by its terms. Neither Falls' statement of material facts nor his brief in support of his

14

summary judgment motion addresses the issue of the signing bonus. Because Falls has provided no references to the record regarding the signing bonus, the Court has no basis whatsoever to support a finding that Falls is entitled to a signing bonus. We thus consider the issue to be waived by Falls.

**CONCLUSION:**

Regardless of whether or not a binding contract was formed between the parties, the Court finds that it would be futile to submit this issue to a jury, because either way, Falls loses. If no binding contract was formed, then Falls was an at-will employee who could be discharged at any time. If an employment contract was formed, Falls materially breached it, and thus State Farm was not obligated to perform under the contract.

For the aforementioned reasons, we will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.